IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KHOA HOANG, | ) | |
| | ) | Case No. 8:23-cv-1272 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| PRINCE GEORGE'S COUNTY, and | ) | |
| AWE-AR IVERSON MALL, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**COMPLAINT**

Plaintiff Khoa Hoang ("Mr. Hoang"), for his complaint against Defendants Prince George's County ("Defendant PGC") and AWE-AR Iverson Mall, LLC ("Defendant AWE"), alleges the following:

1.      Mr. Hoang brings this action to recover damages for the substantial harm he suffered due to Defendant PGC's official policies and customs, and the actions taken by its employees in conformity therewith, that deprived Mr. Hoang of his fundamental rights to equal protection and due process under the law. These official policies and customs, established and sanctioned by Prince George's County Department of Permitting, Inspections and Enforcement ("DPIE"), have led to a systematic denial of justice and egregious violations of Mr. Hoang's constitutionally protected rights, resulting in more than $2,371,500 in damages to Mr. Hoang.

2.      Mr. Hoang further seeks to recover damages for the substantial harm he suffered from the widespread fraud committed by Defendant AWE in connection with its leasing activities at the Shops at Iverson Mall.

3.      Mr. Hoang's claims arise under Section 1983 of the Civil Rights Act of 1871, 42

U.S.C. § 1983, and the laws of the State of Maryland, including Section 5-303(b)(1) of the

Maryland Local Government Tort Claims Act.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and

1343(a)(3) because this case involves questions of federal law and because Mr. Hoang seeks

damages for violations of his civil rights.

5.      The Court has supplemental jurisdiction over the state law claims under 28 U.S.C.

§ 1367(a) because the claims form part of the same case or controversy under Article III of the

United States Constitution. The state law claims share all common operative facts with Mr.

Hoang's federal law claims, and the parties are identical. Resolving Mr. Hoang's federal and

state claims in a single action serves the interests of judicial economy, convenience, consistency,

and fairness to the parties.

6.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant PGC

is a municipal corporation situated within this judicial district, Defendant AWE regularly

transacted business within this judicial district, and a substantial part of the events giving rise to

Mr. Hoang's claims that occurred within this judicial district.

## THE PARTIES

7.      Plaintiff Khoa Hoang is a Chinese immigrant entrepreneur who owns several hair

and nail salon businesses in Prince George's County. The hair and nail salon business that forms

the subject of the Complaint is located at the Shops at Iverson Mall in Temple Hills, Maryland.

Mr. Hoang resides in Montgomery County, Maryland.

8.      Defendant Prince George's County is a municipal corporation duly organized and existing under the laws of the State of Maryland. Defendant PGC's Charter provides that PGC shall be the named party in all actions and proceedings touching its rights, powers, properties, liabilities, and duties. DPIE is an agency of Defendant PGC that is responsible for, among other things, the administration and enforcement of Defendant PGC's permitting functions. Defendant PGC is the proper party in suits against DPIE.

9.      Defendant AWE-AR Iverson Mall, LLC is a limited liability company organized under the laws of Delaware and has its principal place of business in Wilmington, Delaware. Defendant AWE owned, operated, and/or managed the Shops at Iverson Mall and served as the landlord for Mr. Hoang.

## BACKGROUND FACTS

10.      In May 2017, Mr. Hoang established a hair and nail salon business in Prince George's County, Maryland. Mr. Hoang opened the company's first location at 4666 Suitland Road, Hillcrest Heights, Maryland 20746, and a second location at 2805 Walters Lane, District Heights, Maryland 20747.

11.      On May 24, 2018, after being solicited by one of the owners of Iverson Mall, Mr. Hoang signed a lease (the "Lease") with Defendant AWE to open a third hair and nail salon at the mall (hereinafter referred to as the "Hair & Nail Salon"). This third store consisted of roughly 3,300 square feet of space, which was approximately three times the size of Mr. Hoang's other hair and nail salon businesses.

12.      Shortly after executing the Lease, Mr. Hoang hired Aurora Architects, LLC to prepare the plans for the Hair & Nail Salon, and submitted the final plans to DPIE for review.

Attached hereto as Exhibit 1 is a true and correct copy of the architectural plans for the Hair & Nail Salon.

13.    On October 29, 2018, DPIE issued Mr. Hoang a "New tenant Build-out with use and occupancy" DPIE CUW permit to perform the necessary construction work at the location. Attached hereto as Exhibit 2 is a true and correct copy of the DPIE CUW Permit.

14.    On February 21, 2019, Mr. Hoang met with one or more DPIE representatives to discuss the scope of work that was required to obtain the necessary use and occupancy (U&O) permit to lawfully operate the Hair & Nail Business. During the meeting, DPIE representatives failed to inform Mr. Hoang that he could not receive a U&O permit because Defendant AWE did not have a U&O permit for Iverson Mall. Instead, the DPIE representatives told Mr. Hoang that he needed to obtain certain permits  before the Agency could schedule a closeout inspection and then issue a U&O permit if Mr. Hoang passed the inspection.

15.    In reliance on the representations made by DPIE representatives, Mr. Hoang expended significant time and resources to obtain the required permits, including electrical, mechanical, and structural permits.

16.    On June 24, 2019, after obtaining all necessary permits in accordance with DPIE's instructions, DPIE Inspector Charles Montgomery performed a final closeout inspection at the Hair & Nail Salon with Mr. Hoang present. Inspector Montgomery informed Mr. Hoang that everything had been cleared on DPIE's end and that he should receive his U&O permit in the mail within the next week or so.

17.    In or around September 2019, after receiving no news or updates about the U&O permit, Mr. Hoang visited DPIE's office to try to obtain a copy of the permit. The DPIE representative informed Mr. Hoang that, even though there was an approved U&O permit

available for him because he had passed all required inspections, the permit was not valid since it had no issue date on it. The DPIE representative further informed Mr. Hoang that the Agency could not issue any U&O permits to tenants at Iverson Mall because Defendant AWE did not have a valid U&O permit for the mall. Attached hereto as Exhibit 3 is a true and correct copy of the Permit and Licenses Application Tracking System Printout that reflects DPIE's statements to Mr. Hoang.

18.     In December 2019 and March 2020, Mr. Hoang visited DPIE's office again to check on the status of his U&O permit. During both visits, DPIE representatives again informed Mr. Hoang that his U&O permit was available but could not be issued because DPIE could not "give U&O permits to any business in Iverson Mall."

19.     In or around February 2021, Shoppers World opened for business at Iverson Mall. Shoppers World opened for business despite DPIE's position that no U&O permits would be issued to new tenants until Defendant AWE obtained a U&O permit for Iverson Mall. At the time Shoppers World opened, Defendant AWE had not yet obtained a U&O permit for Iverson Mall. To date, Iverson Mall still does not have a U&O permit.

20.     Upon information and belief, DPIE granted Shoppers World a temporary U&O permit so that it could open for business at Iverson Mall, even though Defendant AWE did not have a U&O permit for the mall. In granting Shoppers World a temporary U&O permit while the mall did not have a U&O permit, DPIE violated the Prince George's County Code.

21.     On or about April 2021, Mr. Hoang again visited DPIE's office to check on the status of his U&O permit, but he received the same response. The DPIE representative informed Mr. Hoang that his U&O permit was available but that it could not be issued until Defendant AWE obtained a U&O permit for Iverson Mall. The DPIE representative did not inform Mr.

Hoang about any opportunities to obtain a temporary U&O permit that would allow him to open the Hair & Nail Salon even though Defendant AWE did not have a U&O permit for Iverson Mall.

22.     DPIE representatives never informed Mr. Hoang about the possibility of obtaining a temporary U&O permit so that he could lawfully open the Hair & Nail Salon even though Defendant AWE did not have a U&O permit.

23.     Mr. Hoang first learned that DPIE was selectively granting temporary U&O permits to businesses at Iverson Mall after he received a deposition subpoena in December 2022, in connection with a separate case involving a similar issue.

24.     Because he lacked a valid U&O permit, Mr. Hoang was not able to apply for or obtain the necessary business license to legally operate his Hair & Nail Salon business in the commercially leased space in Iverson Mall. All the while, Mr. Hoang continued to pay $4,000 a month in rent for the commercial space.

25.     At all times relevant to the claims herein, Defendant AWE knew that Mr. Hoang would be unable to obtain a U&O permit to lawfully operate his Hair & Nail Salon business at Iverson Mall. Despite this knowledge, Defendant AWE induced Mr. Hoang to execute a lease for commercial space at Iverson Mall, collected rent from Mr. Hoang, and imposed a daily fee of $250 against Mr. Hoang for each day the Hair & Nail Salon was not open for business.

26.     In December 2019, Defendant AWE sent an email to the Director of DPIE requesting, among other things, that DPIE not inform prospective tenants about Iverson Mall's permit discrepancies and/or issues. Attached hereto as Exhibit 4 is a true and correct copy of the email correspondence.

27.     In accordance with his lease agreement, Defendant AWE charged Mr. Hoang

$250.00 each day he was unable to open the Hair & Nail Salon business. Mr. Hoang was unable

to open the business because DPIE instituted an arbitrary and discriminatory policy that

prohibited small minority business owners like Mr. Hoang from lawfully transacting business at

Iverson Mall while at the same time allowing large business tenants in the mall to do so.

Defendant AWE knew or should have known that it needed a U&O permit for Iverson Mall

before its tenants could obtain a U&O permit. Defendant AWE imposed more than $200,000 in

fines against Mr. Hoang under the Lease, while collecting monthly rent payments of $4,000.

### *Estimate of Financial Harm*

28.     From May 2018 through June 2021, Mr. Hoang paid at least $91,000 to

Defendant AWE for rent and other obligations called for in the Lease.

29.     From the operations of the Hair & Nail Salon business at Iverson Mall, Mr.

Hoang anticipated receiving gross revenues of $700,000 in 2019; $1,500,000 in 2020;

$1,575,000 in 2021; and $1,653,750 in 2022. Mr. Hoang forecasted that his annual gross revenue

from the Iverson Mall store would be roughly $1,500,000, with at least a 5% increase in gross

revenues year-after-year.

30.     Mr. Hoang's gross revenue forecasts are based on the square footage of the

Iverson Mall store located and the past performance of Mr. Hoang's two similar nail and hair

salon businesses.

31.     Mr. Hoang predicted he would net a profit equal to 40% of the gross revenues

from year-to-year, which is based on the net profit he received from his other two hair and nail

salon business locations.

32.     Based on Mr. Hoang's conservative estimates, DPIE's official policies or customs, and the actions taken by its employees in conformity therewith, caused Mr. Hoang's to lose at least $2,171,500 in net profit from July 2019 through the present.

33.     Because Mr. Hoang was unable to lawfully open his business due to the lack of a U&O permit, he was ineligible to receive any of the small business loans, grants, or other benefits offered by the Small Business Administration in connection with the COVID-19 relief measures (e.g., the Paycheck Protection Program and the Economic Injury Disaster Loan).

## COUNT I
**Defendant PGC's violation of Mr. Hoang's right to equal protection under the law**

34.     Mr. Hoang incorporates herein by reference the allegations set forth in paragraphs 7 through 33.

35.     The Fourteenth Amendment's Equal Protection Clause prohibits any state from denying a person equal protection through the enactment, administration, or enforcement of its laws or regulations.

36.     The Equal Protection Clause requires that Defendant PGC—and DPIE—apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose.

37.     A municipality like Defendant PGC is liable under 42 U.S.C. § 1983 if it violates the Equal Protection Clause through an official policy or custom.

38.     While acting under color of state law, Defendant PGC deprived Mr. Hoang of equal protection under the law, in violation of the Fourteenth Amendment, by imposing a discriminatory and arbitrary barrier that prohibited him from receiving the same benefits or opportunities under the law that Defendant PGC conferred upon or granted to other similarly situated business owners received.

39.     Mr. Hoang's status as an Asian-American is the only meaningful difference between him and other similarly situated business owners who were not subjected to the same discriminatory and arbitrary actions taken by DPIE. DPIE employees provided preferential treatment to large business tenants and non-Asian business owners by granting them temporary U&O permits that allowed them to operate at Iverson Mall even though the mall did not have a U&O permit.

40.     At all times relevant to the claims herein, Defendant PGC maintained a series of customs, policies, and practices that proximately caused—and that were likely to lead to a violation of—Mr. Hoang's constitutional and civil rights. Defendant PGC's conduct demonstrated a deliberate indifference to Mr. Hoang's federally protected rights.

41.     Defendant PGC's conduct was willful and malicious, and constitutes a continuing violation of the Fourteenth Amendment.

## COUNT II
### Defendant PGC's violation of Mr. Hoang's substantive due process rights

42.     Mr. Hoang incorporates herein by reference the allegations set forth in paragraphs 7 through 33.

43.     The Fourteenth Amendment's Due Process Clause prohibits a state from depriving any person of life, liberty, or property without due process of law.

44.     A municipality like Defendant PGC is liable under 42 U.S.C. § 1983 if it violates the Due Process Clause through an official policy or custom.

45.     The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.

46.     Mr. Hoang had a protected property interest in obtaining the approved U&O permit to lawfully open his business at Iverson Mall. DPIE had approved the U&O permit on or about July 2019, and there was nothing left for the Agency to do but issue the permit to Mr. Hoang.

47.     Acting under color of state law, Defendant PGC refused to issue Mr. Hoang the approved U&O permit for nearly four years, thereby depriving him of his protected property interest. Defendant PGC's actions were arbitrary, irrational, and unjustified because it granted U&O permit to similarly situated tenants at Iverson Mall even though the mall did not have a U&O permit.

48.     No pre-deprivation or post-deprivation process could cure the actions taken by Defendant PGC because: (a) it acted outside the scope of the law in granting U&O permits to large business tenants at Iverson Mall when the mall did not have a U&O permit; and (b) Defendant PGC did not inform tenants like Mr. Hoang that it was possible to obtain a temporary U&O permit even though Iverson Mall did not have a U&O permit.

49.     The actions taken against Mr. Hoang by DPIE were motivated by an intent to discriminate against him because of his status as an Asian-American—the only meaningful difference between Mr. Hoang and the similarly situated business tenants that DPIE granted preferential treatment to.

50.     The actions taken by DPIE against Mr. Hoang were motivated by intent to discriminate against him because of his political status, or lack thereof.

## COUNT III
### Defendant PGC's violation of Article 24 of the Maryland Declaration of Rights

51.     Mr. Hoang incorporates herein by reference the allegations set forth in paragraphs 7 through 33, 38 through 41, and 46 though 50.

Page **10** of **14**

52.     Article 24 of the Maryland Declaration of Rights affords Mr. Hoang the same rights and protections as those guaranteed to him under the Equal Protection and Substantive Due Process Clauses of the Fourteenth Amendment.

53.     Through its official policies or customs, and the actions taken by its employees in conformity therewith, Defendant PGC deprived Mr. Hoang of his constitutional rights under Article 24 of the Maryland Declaration of Rights.

54.     Mr. Hoang suffered significant harm because of Defendant PGC's actions.

## COUNT IV
**Defendant PGC's liability under 42 U.S.C. § 1983 for failure to train its employees**

55.     Mr. Hoang incorporates herein by reference the allegations set forth in paragraphs 7 through 33.

56.     A municipality like Defendant PGC may be liable under 42 U.S.C. § 1983 if it fails to train its employees in a manner that evidences a deliberate indifference to the rights of its citizens.

57.     The harm suffered by Mr. Hoang was caused, in part, by Defendant PGC's failure to adequately train its employees. Had Defendant PGC adequately trained its employees, then: (a) a final closeout inspection would not have been performed by Inspector Montgomery; (b) DPIE employees would not have repeatedly represented to Mr. Hoang that he would be able to obtain a U&O permit for the hair and nail salon business; (c) DPIE would have afforded Mr. Hoang the opportunity to receive a temporary U&O permit during the period of time that Iverson Mall did not have a U&O permit; and (d) DPIE employees would not have treated Mr. Hoang differently under the law than the similarly situated tenants at Iverson Mall that DPIE allowed to lawfully open for business after July 2019.

58.     Based on the conflicting actions taken by Inspector Montgomery and other DPIE employees, the need for training was obvious.

59.     The actions taken against Mr. Hoang by DPIE employees were caused, in part, by Defendant PGC's failure to adequately train its employees.

60.     Defendant PGC failed to adequately train its employees despite receiving numerous complaints regarding the arbitrary and discriminatory nature of the permitting, inspection, and enforcement practices being performed by DPIE employees at Iverson Mall.

61.     Defendant PGC's failure to adequately train its employees reflects a deliberate indifference to Mr. Hoang's federally protected rights.

62.     Mr. Hoang suffered significant harm because of Defendant PGC's failure to adequately train its employees.

## COUNT V
### Fraud by Defendant AWE

63.     Mr. Hoang incorporates herein by reference the allegations set forth in paragraphs 7 through 33.

64.     Defendant AWE told Mr. Hoang that he would be able to open his Hair & Nail Salon business at Iverson Mall. Defendant AWE's representation was false. The representation was a material fact, and a reasonable person in Mr. Hoang's position would have viewed the representation as material.

65.     Defendant AWE made the false statement with knowledge of its falsity or with a reckless indifference to its truth. Defendant AWE knew that it did not have a valid U&O permit for Iverson Mall at the time it solicited and induced Mr. Hoang to execute the Lease.

66.     Defendant AWE continued to collect rent from Mr. Hoang, and imposed fines against Mr. Hoang under the Lease, even though it knew that DPIE would not issue Mr. Hoang a U&O permit until Defendant AWE obtained a U&O permit for Iverson Mall.

67.     Defendant AWE made the false representation to Mr. Hoang with the purpose of defrauding him.

68.     Mr. Hoang detrimentally relied on Defendant AWE's representation and suffered significant financial harm in doing so.

69.     The actions taken against Mr. Hoang by Defendant AWE were willful and malicious.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Hoang respectfully requests that the Court enter judgment on the Complaint, in his favor and against Defendants Prince George's County and AWE-AR Iverson Mall, LLC, as follows:

A.     Declare that Defendant PGC's permitting, inspection, and enforcement practices at Iverson Mall, in connection with the issuance of U&O permits, reflect a deliberate indifference to the risk that constitutional violations will occur;

B.     Award Mr. Hoang compensatory damages for the harm he suffered as a result of Defendants' conduct, in a fair and reasonable amount to be determined at trial;

C.     Award Mr. Hoang punitive damages against Defendant AWE, in an amount that sufficiently punishes, penalizes, and/or deters its unlawful conduct;

D.     Award Mr. Hoang pre-judgment and post-judgment interest;

E.     Award Mr. Hoang the costs and fees he incurred in pursuing his civil rights claims, including his reasonable attorneys' fees;

F.      Enter an injunction requiring individuals employed by DPIE to complete Section 1983 training that covers municipal liability, in a manner and format approved by the Court; and

G.      Award Mr. Hoang such other relief that the Court deems just and proper.


Dated: May 15, 2023

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
MD Bar No.: 2006110003
Managing Attorney
JD Howlette Law
1140 3rd St. NE
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@jdhowlettelaw.com
*Counsel for Plaintiff*
