JD HOWLETTE | LAW

Federal Litigation · Tax Controversy · Business Law · Civil Disputes

1140 3rd Street NE ▪ Washington, DC 20002
Office: (202) 921-6080 | Fax: (202) 921-7102
info@jdhowlettelaw.com | www.jdhowlettelaw.com

July 27, 2023

*Sent by Electronic Means*

The Honorable Gina L. Simms
United States Magistrate Judge
U.S. District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, Maryland 20770

**RE: Plaintiff's Response to Letter Filed by Defendant AWE-AR Iverson Mall, LLC**
***Khoa Hoang v. Prince George's County, et al.* (Case No. 8:23-cv-1272)**

Dear Judge Simms:

In accordance with the Court's Order (ECF No. 18), Plaintiff Khoa Hoang ("Mr. Hoang") respectfully submits this letter in response to the letter filed by Defendant AWE-AR Iverson Mall, LLC ("AWE") (ECF No. 17).

Through its letter, AWE seeks permission to file a motion to dismiss under Fed. R. Civ. P. 12(b)(6) on the basis that Mr. Hoang's fraud claim is untimely. According to AWE, Mr. Hoang's allegations about statements made by County employees in September 2019, December 2019, and March 2020 irrefutably placed Mr. Hoang on notice that the statements made by AWE prior to him executing the lease in May 2018 were false. Therefore, AWE contends that Mr. Hoang's fraud claim[1] began to accrue as early as September 2019 and no later than March 2020.

## **Applicable Legal Standard**

Mr. Hoang agrees that the heightened pleading standard under Fed. R. Civ. P. 9(b) governs his fraud claim against AWE, and Rule 9(b) expressly states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b)'s heightened pleading standard aims to: (1) provide the defendant with sufficient notice of the basis for the plaintiff's claim; (2) protect the defendant against frivolous suits; (3) eliminate fraud actions where all of the facts are learned only after discovery; and (4) safeguard the defendant's reputation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). In keeping with these objectives, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of

---

[1] In its letter, AWE repeatedly (and intentionally) mischaracterizes Mr. Hoang's fraud claim as one for fraud-in-the-inducement. But Mr. Hoang alleges that AWE engaged in several fraudulent actions throughout its dealings with Mr. Hoang, beginning with the false representations made to Mr. Hoang that induced him to seek out business opportunities at Iverson Mall and ending with AWE's false representations to Mr. Hoang in June 2021 that led to Mr. Hoang paying $40,000 to AWE for a debt he did not owe.

the particular circumstances for which she will have to prepare a defense at trial and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Id*.

### I. Mr. Hoang's fraud claim is not time barred.

Defendant AWE contends that the Complaint establishes that Mr. Hoang's "fraud-in-the-inducement" claim is time barred under the applicable three-year statute of limitations. Specifically, AWE argues that Mr. Hoang was on actual notice that AWE's representations regarding his ability to open for business were false, as early as September 2019, when Mr. Hoang was informed by DPIE that Iverson Mall did not have a Use & Occupancy permit. Therefore, according to AWE, Mr. Hoang was required to initiate his fraud claim on or before September 2022. While certainly a valiant effort to forever dim the light on its egregious conduct at Iverson Mall, AWE's statute of limitations argument misses the mark.

Under the discovery rule, a plaintiff's cause of action only begins to accrue once "the plaintiff knows or reasonably should have known of the wrong[,]" meaning the plaintiff "possesses facts sufficient to cause a reasonable person to investigate further, and . . . a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort." *Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 588 (D. Md. 2019), *as amended* (June 17, 2019). Here, contrary to AWE's contention, a diligent investigation by Mr. Hoang would not have uncovered the alleged fraud on the part of AWE. To be clear, Mr. Hoang contends that, in September 2019, a DPIE employee informed him that a U&O permit could not be issued for his business until AWE obtained a U&O permit (Compl., ¶ 17). At that point in time, Mr. Hoang simply knew that AWE did not have a valid U&O permit for Iverson Mall. Mr. Hoang did not know whether AWE had a permanent or temporary U&O permit at the time he negotiated the lease, nor did Mr. Hoang know the extent to which AWE was aware that it needed a U&O permit before Mr. Hoang could open for business.[2]

In fact, Mr. Hoang did not become aware of AWE's culpability until documents were produced in a separate, similar case that revealed communications between AWE and DPIE representatives regarding the matter. Exhibit 4 to the Complaint, for example, is one of those many documents that not only revealed the extent of AWE's knowledge, but also purports to show a concerted effort to conceal the U&O permit issue from tenants like Mr. Hoang and prospective tenants alike. Moreover, under the continuing harm doctrine, the statute of limitations starts anew after each new wrong or harm occurred. *Grier v. United States Dep't of Hous. & Urb. Dev.*, Case No. 21-CV-2165, 2022 WL 16923870, at *5 (D. Md. Nov. 14, 2022). AWE subjected Mr. Hoang to a new harm each time it falsely claimed that: (1) Mr. Hoang owed AWE a daily penalty of $250 for failing to open for business; and (2) Mr. Hoang owed monthly

---

[2] As AWE correctly points out, DPIE arbitrarily allowed some large business tenants to obtain temporary U&O permits even though AWE did not have a U&O permit for Iverson Mall. At the same time, DPIE refused to issue U&O permits to other tenants (usually small businesses) solely because AWE did not have a U&O permit. Thus, a diligent investigation on the part of Mr. Hoang would not have revealed the extent to which AWE was aware that Mr. Hoang would have been unable to open for business at the time he negotiated the lease. Nevertheless, Mr. Hoang alleges additional fraudulent conduct on the part of AWE well after the lease execution date.

rent of $4,000 for space he could not lawfully use due to AWE's failure to procure a U&O permit (Compl., ¶¶ 24 and 25). Mr. Hoang contends that AWE improperly extracted $40,000 of this alleged debt from him in June 2021 (well within the three-year statutory period regardless of the parties' positions), while separately collecting $56,000 between May 2018 and January 2020. *See* Exhibit A, Failure to Pay Rent Notice & Payment Ledger.

## II.     Mr. Hoang's fraud claim is plausible on its face.

In his Complaint, Mr. Hoang alleged that "AWE told Mr. Hoang that he would be able to open his Hair & Nail Salon business at Iverson Mall[,]" and that the statement was false because "AWE knew that it did not have a valid U&O permit for Iverson Mall at the time it solicited and induced Mr. Hoang to execute the Lease." (Compl., ¶¶ 64 and 65). Mr. Hoang is a Chinese immigrant who has very limited English proficiency. Because of his limited English proficiency, Mr. Hoang does not recall the names of the AWE representatives who he spoke with while negotiating the lease. However, this fact is something that can be easily ascertained in discovery. Mr. Hoang further alleged that AWE knowingly claimed certain sums (i.e., invalid debts) due from Mr. Hoang that it knew were not in fact due and owing—$40,000 of which was collected in June 2021. Mr. Hoang alleged that he detrimentally relied on AWE's representations. (Compl., ¶¶ 68 and 69).

## III.    If necessary, and subject to the Court's approval, Mr. Hoang is willing to amend the Complaint to bring about a speedy and inexpensive resolution to the matter.

In an effort to secure a just, speedy, and inexpensive resolution to the pending dispute, and should the Court determine it necessary and proper, Mr. Hoang is willing to amend his Complaint to add the corporate entity, VIP Nails & Spa Inc.,[3] as a party, and replace the fraud claim against AWE with new claims for unjust enrichment, breach of contract, and civil conspiracy.

                                                                             Sincerely,

                                                                             *Jordan Howlette*
                                                                             JORDAN D. HOWLETTE
                                                                             Managing Attorney
                                                                             JD Howlette Law
                                                                             (202) 921-6005
                                                                             jordan@jdhowlettelaw.com

---

[3] VIP Nails & Spa Inc. is solely owned by Mr. Hoang. During the lease negotiations, AWE required that Mr. Hoang add his wife and two other individuals as guarantors on the lease. None of these individuals have an ownership in VIP Nails & Spa Inc., which was formed for the purpose of doing business at Iverson Mall. Thus, AWE's contention regarding the proper party is much more of a form over substance one. Mr. Hoang is the one who suffered the harm here.