**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KHOA HOANG,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civ. No. 23-cv-01272-JMC** |
| **PRINCE GEORGE'S COUNTY, et al,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Khoa Hoang, ("Plaintiff") initiated the present lawsuit on May 15, 2023, against Defendants Prince George's County ("PG County" or "Defendant") and AWE-AR Iverson Mall, LLC ("Iverson Mall").[1] (ECF No. 1). The matter arises from PG County's alleged failure to issue Plaintiff a Use and Occupancy permit (the "U & O permit") necessary to open a nail salon at the Iverson Mall. *See id.* Plaintiff asserts four claims against PG County. They include alleged violations of 42 U.S.C. § 1983 based on equal protection ("Count I"); 42 U.S.C. § 1983 based on substantive due process ("Count II"); Article 24 of the Maryland Declaration of Rights based on Equal Protection and substantive due process ("Count III"); and 42 U.S.C. § 1983 based on failure to train ("Count IV"). *See generally id.* Presently pending before the Court is Defendant's Motion for Summary Judgment (the "Motion") (ECF No. 78). The motion is fully briefed with respect to Count I and Count IV (ECF Nos. 78, 80, 83, 84, 85), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Motion will be GRANTED in part and DENIED in part pending additional briefing.

[1] In a Memorandum Opinion and Order dated September 5, 2024, this Court granted Defendant Iverson Mall's motion to dismiss with prejudice. (ECF Nos. 35, 36).

## I. BACKGROUND[2]

On May 24, 2018, Plaintiff, an Asian-American immigrant, executed a lease with the Iverson Mall to open a company known as "VIP Nails & Spa Inc.," doing business as VIP Nails. (*Hoang Deposition*, ECF No. 85 at 25-26).[3] Plaintiff's leased space had no direct customer access to the outside parking area. *Id.* At the time of contracting, the leased space was not yet ready for operation and required internal construction. *Id.* at 32. In preparation to open the salon for operation, Plaintiff hired Aurora Architects, LLC and initiated the process to obtain necessary permits through PG County's Department of Permitting and Inspections Enforcement (the "DPIE"). *Id.* at 32-33. The architect and other contractors worked together to construct alterations to the leased space needed to function as a nail salon. *Id.* at 33.

However, in order to lawfully operate the salon, Plaintiff needed to obtain a final U & O permit. (ECF No. 1). During the building process, DPIE inspectors periodically came to the property to evaluate compliance with the County's regulations. (ECF No. 85 at 32-33). Passing these inspections is necessary for approval to move to the next phase of building and closer toward receiving an approved permit. *See id.* If the DPIE inspector concluded that the construction was not approvable, the inspector would indicate a "failed" status. *Id.* at 34. If Plaintiff received a fail, he would have to ensure changes were made until the DPIE inspector approved them and issued a "pass." *Id.* at 34-35. It is undisputed that Plaintiff received the necessary permits to initiate the construction process and passed each phase prior to a final inspection. There is only one permit at issue: a final U & O permit.

---

[2] The facts described herein are available for review by way of an agreed upon Joint Appendix. (ECF No. 85). The record before the Court is well-developed. The Court has streamlined certain details into the narrative presented below based on the background necessary to assess the instant Motion.

[3] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

On June 27, 2019, the DPIE sent Mr. Charles Montgomery to perform a final inspection, which was the last step necessary to issue the final U & O permit Plaintiff needed to open his salon. *Id.* at 36-37. After another Final Inspection on July 2, 2019, Plaintiff expected to receive a U & O permit in the mail. *Id.* at 39-40. However, two months passed, and Plaintiff did not receive his permit. *Id.* at 40. Plaintiff called the DPIE to inquire about his U & O permit status, at which point they advised him that the U & O was available, but there was no effective date affiliated with it, so they could not issue it. *Id.* It is now undisputed that the internal DPIE system suffered from some kind of glitch, which prevented DPIE employees from overriding the system. It is further undisputed that Plaintiff's file contained a note indicating that his permit could not be issued because of a broader issue showing the Iverson Mall also lacked approval. That is, because Iverson Mall itself did not have all the necessary permits to operate, its tenants could not be issued final U & O permits.

Plaintiff understood the defect required some action on Iverson Mall's behalf, so he "took his word and…[waited] thinking that….Iverson Mall is correcting it." *Id.* at 41. Two more months passed, and Plaintiff called back in November, at which point he was advised that the permit was still not available. *Id.* Plaintiff continued to wait, but the COVID-19 pandemic began to spread in March of 2020, causing a national shutdown. *Id.* at 43. During COVID, Plaintiff ceased efforts to follow up with the DPIE about his permit status until September because the mall was closed. *Id.* at 44. Plaintiff later learned that Iverson Mall itself did not have a U & O. DPIE employee Lauren Clagett later testified about the DPIE system which prevented Plaintiff from obtaining his permit. *Id.* at 334. She indicated that the owner of the Iverson Mall did not have a U & O, meaning the DPIE was technically unable to issue the individual tenants a U & O because the owner did not have one. *Id.*

In one conversation with a DPIE representative, which took place on a date that is unclear, the DPIE advised Plaintiff that because the mall was "not up to code," they could not issue the permit Plaintiff wanted. *Id.* at 45. Defects at the mall included an escalator and elevators that were not operational, a parking lot that was locked, and other various issues that "that would prevent them to have—to allow to open the business." *Id.* at 45. As has been clarified by the briefing, the primary issue with the Iverson Mall was a fire alarm that was not working, and therefore the Mall was not compliant with the local fire and safety codes. *See id.* at 247. Consistent with Ms. Clagett's testimony, Plaintiff indicated that from his point of view, "the mall need[ed] to fix all that for [him] to get [his] U & O.[4]" *Id.* at 45.

Plaintiff indicated that because other businesses—in different locations that did have access to exits—were functioning "like normal," he too should have been issued a U & O permit. *See id.* at 46. Without the U & O permit, Plaintiff was not able to move forward with other business applications. *Id.* at 47. Plaintiff's U & O permit was available in April of 2021, but consistent with the previous issues, it was not issuable for want of an effective date. Notwithstanding the DPIE employees' efforts to help Plaintiff navigate the unique situation, the DPIE eventually told Plaintiff they did not know what to do. *Id.* at 48. At that point, Plaintiff retained counsel. *Id.*

Plaintiff eventually brought suit, alleging four counts detailed above against PG County. (ECF No. 1). However, Plaintiff was not alone in his frustration with Iverson Mall. DPIE employee Nicole Reece sent a memo to DPIE employees addressing the challenges presented at the Iverson Mall:

> Iverson Mall has continued to sign new leases and encourage current tenants to file for building permits. Once the tenants have completed their construction and

[4] Plaintiff testified that he reached out to the Iverson Mall multiple times for assistance with his permitting timeline. (ECF No. 85 at 46). However, the mall was of no assistance and demanded lease payments on time, as Plaintiff was still leasing the property. *Id.*

> expended considerable resources, they are then confronted with the reality that they are unable to obtain a final certificate of occupancy and open for business.

(*Kashanian Deposition*, ECF No. 85 at 267) (cleaned up).

Plaintiff's Equal Protection claim alleges that "Defendant PGC deprived Mr. Hoang of equal protection under the law, in violation of the Fourteenth Amendment, by imposing a discriminatory and arbitrary barrier that prohibited him from receiving the same benefits or opportunities under the law that Defendant PGC conferred upon or granted to other similarly situated business owners received." *Id.* at 8. The Complaint alleges both that DPIE failed to issue his U & O permit sooner because (1) he is an Asian-American and (2) in an arbitrary manner. *See id.* As will be discussed in greater detail below, such theories are governed by differing standards.

Plainitff's due process claim alleges that "Mr. Hoang had a protected property interest in obtaining the approved U & O permit to lawfully open his business at Iverson Mall. DPIE had approved the U & O permit on or about July 2019, and there was nothing left for the Agency to do but issue the permit to Mr. Hoang." *Id.* at 9. Thus, "Defendant PGC refused to issue Mr. Hoang the approved U & O permit for nearly four years, thereby depriving him of his protected property interest. Defendant PGC's actions were arbitrary, irrational, and unjustified because it granted U & O permit to similarly situated tenants at Iverson Mall even though the mall did not have a U & O permit." *Id.* at 10.

Plaintiff's failure to train claim asserts that based on the conflicting actions of Inspector Montgomery, who recommended U & O approval, and other DPIE employees who refused to issue the U & O permit, such actions "were caused, in part, by Defendant PGC's failure to adequately train its employees." *Id.* at 12. To that end, he alleges that

> Had Defendant PGC adequately trained its employees, then: (a) a final closeout inspection would not have been performed by Inspector Montgomery; (b) DPIE employees would not have repeatedly represented to Mr. Hoang that he would be

> able to obtain a U & O permit for the hair and nail salon business; (c) DPIE would have afforded Mr. Hoang the opportunity to receive a temporary U&O permit during the period of time that Iverson Mall did not have a U&O permit; and (d) DPIE employees would not have treated Mr. Hoang differently under the law than the similarly situated tenants at Iverson Mall that DPIE allowed to lawfully open for business after July 2019.

*Id.* at 11.

During discovery, the presence of two other comparator businesses' operation at the Iverson Mall has come into controversy. First, a business operating as Shopper's World obtained a final U & O permit on October 1, 2020. (*Kashanian Deposition*, ECF No. 85 at 247). The DPIE corporate representative, Mr. Behdad Kashanian testified that Shopper's World was able to obtain a U & O permit because it "is an independent building" located in the "old Woody's building" that was merely connected to the Iverson Mall. *Id.* The "Woody's Building" was "built back in the 60s…[and] is an independent building with an independent fire alarm and a sprinkler system." *Id.* "So even though it's connected to Iverson Mall, it's an independent structure" that had other exits and its own fire system. *Id.* at 247-48.

Although not the subject of argument in this case, there is evidence of another business that received a permanent U & O before the DPIE began issuing only temporary U & Os known as Quickway Japanese Hibachi. *Id.* at 248. Mr. Kashanian testified that the DPIE changed its policy to issue only temporary U & Os after it learned "additional information about the life safety, basically, devices in the mall" and "that they had to be corrected." *Id.* at 250. Consistent with that notion, Mr. Kashanian indicated that approval would require documents they did not have in this case, such as proof of fire alarm testing, certain maintenance certifications, smoke detector certifications, sprinkler system certifications, portable fire extinguisher certifications, emergency exit certifications, and emergency generator certifications would all be necessary to Plaintiff's U & O permit to be approved. *Id.* at 254. Also subject to argument here is the temporary U & O

issued to a business known as CitiTrends in 2022. When asked why CitiTrends was able to obtain a U & O, the director of DPIE testified that she "wouldn't be able to explain the technical reasons," but the "recommendation was that [CitiTrends] had met what engineers needed so that their patrons could get out if there was an emergency." There is no evidence Plaintiff made the same changes to his leased space. It is undisputed that Plaintiff did ultimately receive a U & O permit years later.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot

create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III. ANALYSIS

### A. The Court Declines to Grant Summary Judgment Based on Defendant's Standing Arguments

Defendant first argues that Plaintiff does not have standing to sue. Indeed, parties must have standing to file suit. *Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770 (4th Cir. 2023). "This requirement ensures that a plaintiff has a personal stake in the outcome of a dispute, and that a judicial resolution of the dispute is appropriate." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387 (4th Cir. 2011). To meet this standing requirement: a plaintiff must show: "(i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Richardson v. Prince George's Cnty*., Civ. No. GJH-23-1235, 2026 WL 281027 (4th Cir. Feb. 3, 2026). The Article III standing component excludes an injury-in-fact that is "conjectural or hypothetical" but rather asks the question of whether the injury is "distinct and palpable." *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017).

In *Richardson v. Prince George's County*, the Fourth Circuit considered a similar issue brought by Plaintiff's counsel concerning a different business at the Iverson Mall who brought claims against Defendant. *Richardson v. Prince George's Cnty.*, No. 23-1235, 2026 WL 281027, at *4 (4th Cir. Feb. 3, 2026). In that case, the court considered whether an African American

plaintiff who had not yet applied for a U & O permit to operate a liquor store at the Iverson mall had standing to bring an equal protection claim under 42 U.S.C. § 1983 when, as here, other businesses were operational. *Id.* at *1. There, the Fourth Circuit disagreed with the District Court's conclusion that plaintiff failed to assert an injury in fact, as Defendant argues here.[5] There, however, the plaintiff had not yet even applied for a U & O permit. *Id.* at *5. That notwithstanding, the Fourth Circuit reasoned that this Court failed to address the substance of the complaint, which asserted, as here, that PG County "imposed barriers preventing him from obtaining a use and occupancy permit while allowing several other businesses to proceed without those barriers." *Id.* "According to Richardson, because of his status as a minority-owned, small business, DPIE employees treated Richardson less favorably than other similarly situated businesses by issuing improper correction orders, by imposing substantial fines, and by making statements intended to discourage him from applying for a permit." *Id.* Thus, given the scope of those allegations, the Fourth Circuit concluded that he "sufficiently alleged an injury in fact for purposes of his equal protection claim." *Id.*

Here, Defendant argues that even though Plaintiff is the sole owner of VIP Nails, who testified that he personally funded his business venture and guaranteed its lease obligations, that it is VIP Nails and not Plaintiff who suffered injury as a matter of law. (ECF No. 78-1 at 6). Here, as in *Richardson*, the gravamen of Plaintiff's Complaint alleges that PG County imposed disproportionate, unexplained barriers upon him which prevented his U & O permit from approval, despite taking all necessary steps to obtain approval. *See generally* (ECF No. 1). Moreover, it is undisputed that Plaintiff applied for and completed all necessary steps for his business to be approved—Mr. Montgomery even recommended approval. In view of *Richardson* and

[5] As will be addressed, Defendant's argument against an injury here is slightly different than in *Richardson*.

recognizing that the analysis proceeded with some slight differences, the Court declines to grant summary judgment based on Defendant's standing arguments because the clear essence of Plaintiff's complaint mirrors the *Richardson* complaint. *See Richardson*, 2026 WL 281027, at *5 (finding an injury when [the plaintiff] alleged "actual steps" that he took, which "demonstrate[d] a real interest in seeking" a use and occupancy permit").

**B. Count I Must be Dismissed because There is No Evidence from Which a Reasonable Juror Could Conclude that the DPIE Refused to Issue a Final U & O Because of Plaintiff's Race or that Similarly Situated Businesses were Treated Differently**

Plaintiff styles his Equal Protection Claim through *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). An unconstitutional policy or custom under *Monell* can arise in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citations omitted). Such a policy or custom will "not, however, 'be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees.'" *Id.* (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)). Rather, municipal liability attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694.

To begin, the Court is somewhat unsure of Plaintiff's intended theory. He argues "the evidence demonstrates that DPIE maintained an official policy of refusing to grant U & O permits

to business owners like Mr. Hoang because, according to DPIE, Iverson Mall lacked a U & O permit." (ECF No. 83 at 23). That much appears to be true; it is uncontested that there existed a note that no one at the Iverson Mall was to receive a U & O permit in Plaintiff's DPIE application file. At the very least, it is clear that Plaintiff continues by arguing that the DPIE engaged in selective enforcement of this policy. *Id.* Yet, whether Plaintiff argues the selective enforcement is the result of discrimination against a protected class or the result of an arbitrary decision-making process is not clear. While it appears to be undisputed that there did exist other businesses at the Iverson Mall that were operational, there is no evidence that the DPIE selectively enforced its policies on the basis of Plaintiff's race, as his Complaint alleges. Indeed, the record is silent as to the race of those business owners. Notwithstanding Plaintiff's *Monell* language, the crux of his argument sounds in a theory of an Equal Protection violation passed on a selective enforcement claim. Considering that there is no evidence of a DPIE custom or policy not to issue U & O permits to minorities, the Court will consider a selective enforcement theory.

The Fourteenth Amendment's Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). As recognized above, Plaintiff seeks to enforce this right by way of 42 U.S.C. § 1983. Here, the Court accepts as undisputed that Plaintiff is a member of a protected class as an Asian-American in the Complaint. His argument, which does not explain how race is a component of his selective enforcement claim, is therefore somewhat confusing. To that end, Defendant argues there is no evidence that Plaintiff has been intentionally treated differently from others similarly situated and that even if there is, there is a rational basis for the difference in treatment. The majority of

Plaintiff's arguments seem to adopt the same reasoning, as Plaintiff's arguments apply rational basis language. Here, the evidence shows that CitiTrends made fire and safety changes to the leased space there, which would allow occupants to exit in the event of an emergency. There is no evidence Plaintiff did the same. The undisputed evidence also shows that Shopper's World received a permanent U & O, but because Shopper's World is an independent building with a fire alarm, no reasonable juror could conclude that the two businesses are similarly situated. Although Plaintiff relies on the testimony of another DPIE employee who did not know why the permit was issued to Shopper's World, there is no evidence disputing Mr. Kashanian's testimony. Thus, the Court does not agree with Plaintiff's assertion that "the County's own witnesses admitted they could not explain why some tenants received permits." (ECF No. 83 at 26). From the Court's review of the record, there is a clear explanation as to why Shopper's World was able to receive a final U & O, and those with personal knowledge of it testified to it. Moreover, there is simply no evidence that Shopper's World or CitiTrends received a permit instead of Plaintiff because the owners are of different races.

Even assuming that those evidentiary issues can survive summary judgment, the County continues to argue that PG County has a rational and undisputed reason for the difference in permitting decisions as a matter of law. (ECF No. 78-1 at 9-10). Of course, rational basis scrutiny applies when a plaintiff has not alleged that he was deprived of a fundamental right or subjected to discrimination based on a suspect classification, such as racial discrimination. *Pulte Home Corp. v. Montgomery Cnty.,* 909 F.3d 685, 693 (4th Cir. 2018) (quoting *Heller v. Doe,* 509 U.S. 312, 320 (1993)). Here, the Court cannot readily discern whether Plaintiff attempts to tether his selective enforcement argument to his race based on his brief because he too later argues there was no rational basis for the failure to issue a final permit.

In either scenario, there is simply no evidence beyond pure speculation to support this claim. Although Plaintiff argues that the policy was selectively enforced, he never asserts why it was, nor does he address PG County's stated reasons for the issuance of the other two permits he challenges, which set forth how those businesses were differently situated. Instead, he argues that because some permits were approved—and not addressing the undisputed evidence that the approved permits were either approved with structural safety modifications or the Shopper's World permanent U & O permit—the failure to enforce all permits "supports an inference of intentional discrimination." The evidence simply does not support this theory, certainly in view of the recommended approval that was unable to be processed because the Iverson Mall does not have the prerequisites to allow the issuance of the permit. In a similar spirit to the confusion resulting from Plaintiff's brief, the Complaint references Plaintiff's status as an Asian-American and otherwise states that the decision was arbitrary. Based on the same health and safety rationale described above, the Court finds that the undisputed reasons describing the reasons for the final U & O permit issued to Shopper's World and the temporary U & O permit issued to CitiTrends survive rational basis scrutiny as a matter of law. *See Pulte Home Corp.*, 909 F.3d at 685. On this evidence, a reasonably jury could only conclude that PG County had a rational basis for failing to issue Plaintiff's permit and for issuing the Shopper's World based on a concern for health and fire safety. Based on the foregoing, no reasonable jury could conclude that DPIE "maintained a policy prohibiting U & O permits to be issued to certain Iverson Mall tenants like Hoang, selectively deviated from that policy to grant permits to certain tenants, and denied Hoang a permit without explanation or rational basis" as Plaintiff would urge.

Ultimately, the record shows evidence of an imperfect and unfortunate scenario in which a combination of problems such as the Iverson Mall's safety functions as well as internal DPIE

system issues, which resulted in Plaintiff's U & O permit being delayed for a time period well beyond his reasonable expectation or desire. However, there is simply no evidence showing such undesirable circumstances represent an Equal Protection violation based on race or alternatively based on a theory of arbitrary decision-making. Therefore, the Court must GRANT summary judgment with respect to Count I. (ECF No. 78).

### C. Count IV Must Be Dismissed Because There is No Evidence of a Constitutional Failure to Train Issue

In addition to a selective enforcement claim, Plaintiff also brings a *Monell* claim based on an alleged failure to train. "A municipality can also be liable for an established policy through a failure to train, if it reflects a deliberate or conscious choice to not do so." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 309 (D. Md. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Plaintiff correctly states that in order to establish a failure-to-train claim, a plaintiff must show: (1) a constitutional violation; (2) a municipal training policy that amounts to deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality had properly trained its employees. *See id*. at 388-91. "Training policy deficiencies can include (1) 'express authorizations of unconstitutional conduct,' (2) 'tacit authorizations' of such unconstitutional conduct, and (3) failures to adequately 'prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.'" *McDonnell v. Hewitt-Angleberger*, No. WMN-11-3284, 2012 WL 1378636, at *4 (D. Md. Apr. 19, 2012) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)).

Plaintiff argues that the evidence supports two theories of deliberate inference: (1) that the need for different training was so obvious that an inadequacy was likely to result in the violation of constitutional rights; and (2) that there is evidence of a pattern of constitutional violations that put the municipality on notice that the training was inadequate. (ECF No. 83 at 28-29). However, the record on this issue is sparse. Plaintiff derives this claim in large part because one DPIE inspector testified that he had residential inspection training rather than commercial inspection training; however, Plaintiff's argument overlooks the fact that DPIE recommended his U & O permit for approval, and he did not receive the permit because the Iverson Mall was not approved. In a similar vein, Plaintiff faults DPIE for not having a written policy to instruct their employees on permitting decision at Iverson Mall, resulting in "unfettered discretion" with "inconsistent and discriminatory application of permitting rules that Hoang experienced."

Based on the foregoing analysis, there is no genuine issue of material fact concerning the threshold question of a constitutional violation, let alone any evidence that the DPIE would have notice of an unconstitutional permitting practice that would give notice of a need to train. Nor is there any evidence of what the training should have been or how any training would result in Plaintiff's permit being issued prior to the Mall meeting the lawful standards necessary for the Iverson Mall to receive its own permit.

The Court will accept Plaintiff's representation that other business owners complained of the wait time for their U & O permits as well as the notion that high levels of county government met to discuss the permitting issue at the Iverson Mall. The Court accepts that all tenants who did not receive U & O permits as a result of the several issues at play had justified and genuine frustrations. A jury would certainly infer as much from Ms. Nicole Reece's memo indicating that the Iverson Mall continues to issue leases notwithstanding the reality that U & O permits cannot

be issued. Yet, this evidence is insufficient to generate evidence of obvious notice of a constitutional injury, or even that such an injury could be addressed by different DPIE officer training. Indeed, there is simply no evidence showing that the DPIE could prevent the Iverson Mall from leasing new tenants. The undisputed evidence shows that without working safety functions at the mall, the permits could not be issued in compliance with the law.

Therefore, no reasonable juror could conclude that there exists evidence of Failure to Train.

### D. Plaintiff's Shall Provide Briefing on the Substantive Due Process Claim

Plaintiff asks for leave to respond to Defendant's Motion for Summary Judgment on Count II only if the Court grants summary judgment on the other claims. As such, Plaintiff did not offer a substantive response to Defendant's Motion. In support of this approach, Plaintiff cites to Federal Rule of Civil Procedure 1. As Defendant has not filed a reply, the Court considers this request unopposed. To begin, the Court observes that Plaintiff's request is based on a purported issue of alternative relief. However, Rule 8(d)(2) states, "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Accordingly, alternative pleading serves not to enable a party to defer briefing; it merely allows parties to plead incompatible theories of relief without risking dismissal of the Complaint. At the same time, the Court recognizes that this request was made some time ago, and the Court did not rule on the instant Motion or Plaintiff's embedded request to defer briefing. Although district courts have inherent power to enter summary judgment *sua sponte,* that power is contingent on providing the losing party with notice that it must come forward with evidence to defend its claim. *See U.S. Dev. Corp. v. Peoples Federal Sav. & Loan,* 873 F.2d 731, 735 (4th

Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, (1986)). This notice must provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact, and "in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." *Id.*

Review of the procedure prior to this Court's consideration of the summary judgment motion confirms that Plaintiff has not been given notice regarding this issue. Notably, the Court has not yet ruled on Count III, which asserts violations of the Maryland Declaration of Rights. The Court will reserve considering Count III because Article 24 is construed *in pari materia* with the Fourteenth Amendment. *See Dipino v. Davis*, 354 Md. 18, 43, 729 A.2d 354 (1999); *Telep v. Stickney*, No. 1:23-CV-02379-JMC, 2024 WL 2114761, at *9 (D. Md. May 10, 2024) (collecting cases). The summary judgment motion on Count III is predicated in part on Plaintiff's substantive due process theory. As a result, the Court finds that the motion for summary judgment with respect to Count III can only be partially granted, insofar as it is predicated on an alleged equal protection violation.

Plaintiff is hereby issued notice to provide his briefing with respect to Count II within twenty-eight days of the entry of this Opinion and Order. Defendant may file a reply on that issue fourteen days therefrom, if any.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1. The Motion (ECF No. 78) is GRANTED with respect to Count I and Count IV;
2. The Motion (ECF No. 78) is GRANTED in part with respect to Count III based on an equal protection violation;

3. Plaintiff shall brief a response on the issue of substantive due process within twenty-eight days of the entry of this Opinion and Order; and
4. Defendant shall file a reply thereto, if any, within fourteen days of Plaintiff's brief.

Dated: August 24, 2026

____________/s/___________
J. Mark Coulson
United States Magistrate Judge