**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**KHOA HOANG,**

**Plaintiff,**

**v.**

**PRINCE GEORGE'S COUNTY, et al,**

**Defendants.**

**Civ. No. 23-cv-01272-JMC**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Khoa Hoang, ("Plaintiff") initiated the present lawsuit on May 15, 2023, against Defendants Prince George's County ("PG County" or "Defendant") and AWE-AR Iverson Mall, LLC ("Iverson Mall"). (ECF No. 1). The matter arises from PG County's alleged failure to issue Plaintiff a Use and Occupancy permit (the "U & O permit") necessary to open a nail salon at the Iverson Mall. *See id.* Plaintiff asserts two remaining claims against PG County. They include alleged violations 42 U.S.C. § 1983 based on substantive due process ("Count II") and Article 24 of the Maryland Declaration of Rights based on substantive due process ("Count III").[1] *See generally id.* Presently pending before the Court is Defendant's Motion for Summary Judgment (the "Motion") (ECF No. 78). The motion is fully briefed with respect to Counts II and III (ECF Nos. 78, 87, 89), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Motion will be GRANTED.

[1] On August 24, 2026, the Court granted judgment in favor of PG County on Counts I and IV, and partial judgment on Count III to the extent it alleged an equal protection theory. (ECF No. 86). Based on prior rulings and agreements before the case was reassigned to the undersigned, Plaintiff's previous request for supplemental briefing on the due process issue in the event the Court granted judgment on Plaintiff's other counts was honored, and the parties submitted their supplemental briefing on September 21 and October 5, 2026 respectively. (ECF Nos. 87 and 89).

## I. BACKGROUND[2]

On December 19, 2025, PG County filed a Motion for Summary Judgment. (ECF No. 78). After the motion was briefed, on August 24, 2026, the Court issued a Memorandum Opinion and Order granting PG County's motion in part. (ECF No. 86); *Khoa Hoang v. Prince George's Cty.*, No. 23-CV-01272-JMC, 2026 WL 2474129 (D. Md. Aug. 24, 2026). The Court incorporates the facts detailed in the prior Opinion and Order. (ECF No. 86 at 2-7).[3]

The Court granted summary judgment in favor of PG County with respect to Counts I and IV, and in part with respect to Count III insofar as it is based on an alleged equal protection violation. *Id.* at 17. The Court did not rule on Count II or Count III to the extent it alleges a substantive due process violation. *Id.* Instead, the Court granted Plaintiff's request for leave to brief a response on the issue of substantive due process with respect to the remaining Counts. Plaintiff filed his Supplemental Brief (the "Brief") on September 21, 2026. (ECF No. 87). PG County filed its Opposition on October 5, 2026. (ECF No. 89).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion

[2] The facts described herein are available for review by way of an agreed upon Joint Appendix. (ECF No. 85). The record before the Court is well-developed.

[3] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

## III. ANALYSIS

### A. No Reasonable Juror Could Conclude that Plaintiff Possessed a Vested Property Right in the Final U & O Permit

"The Constitution does not tolerate arbitrary and unreasoned action . . . ." *Scott v. Greenville Cnty*, 716 F.2d 1409, 1420 (4th Cir. 1983). To prevail on his substantive due process claim, Plaintiff must prove "(1) that [he] had property or a property interest; (2) that [PG County] deprived [him] of this property or property interest; and (3) that [PG County's] action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *CMDS Residential, LLC v. Mayor & City Council of Baltimore*, 714 F. Supp. 3d 583,

620 (D. Md. 2024) (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)) (emphasis in original). "A property interest is created and defined by state law, which in this case requires [Plaintiff] to prove that [he] has a 'vested right' in a U&O permit for Property." *Id.* (quoting *A Helping Hand, LLC v. Balt. Cnty., Md.*, 515 F.3d 356, 370–71 (4th Cir. 2008)).

Plaintiff alleges that PG County violated his substantive due process rights by failing to issue him a U & O permit, in which Plaintiff avers he had a protected property interest, to operate a nail salon at the Iverson Mall. *See* (ECF No. 87 at 12). In doing so, Plaintiff appears to convolute two arguments in support of his claim that he possessed a protected property interest in the U & O permit. First, Plaintiff asserts that he acquired a vested right when he "obtained a lawful permit, built under it in good faith, and completed the construction it authorized . . . and DPIE approved but did not issue his U&O permit . . . ." *Id.*[4] However, even construing the facts in the light most favorable to Plaintiff, it is clear that Plaintiff conflates his receipt of building permits and subsequent construction at the Iverson Mall with an entitlement to a final U & O permit. The undisputed evidence in this case makes clear that although Plaintiff received the necessary permits to initiate construction in the Iverson Mall, a final U & O permit was needed to operate the salon. (ECF No. 86 at 2-3). It is clear that Plaintiff's first argument merely seeks to divert attention from the permits required to begin operating a business in the Iverson Mall as clearly established by the record versus those actually obtained by Plaintiff.

Plaintiff's second argument contends that upon Mr. Montgomery's recommendation of approval on July 2, 2019, Plaintiff received a U & O permit that was never revoked by PG County.

[4] Plaintiff supports his position by citing to *Rockville Cars, LLC v. City of Rockville*, which provides that for a property owner "obtain a vested right in an existing zoning use that will be protected against a subsequent changing in a zoning ordinance prohibiting that use . . . a property owner must: (1) obtain a lawful building permit; (2) commence building in good faith; and (3) complete a substantial portion of construction." 891 F.3d 141, 147 (4th Cir. 2018) (citation omitted). However, the record is clear that, unlike relying on existing zoning at the time of construction, Plaintiff never obtained the final U & O permit and could not have similarly relied. Therefore, the Court will analyze whether Plaintiff possessed a legitimate claim of entitlement to the permit *infra*.

(ECF No. 87 at 18). Plaintiff emphasizes that he cannot be characterized as a disappointed applicant, as his U & O permit was approved and any subsequent nonoccurrence was merely ministerial. *Id.* at 15, 18. Yet, the record in this case contradicts Plaintiff's assertion.

"[W]hether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a property interest." *Gardner v. Balt. Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992) (emphasis in original). "Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest." *Id.* (citing *RRI Realty Corp. v. Southampton*, 870 F.2d 911, 918 (2d Cir. 1989)).

Plaintiff's Brief seems to argue both that he possessed a final U & O permit after his final inspection and that he was entitled to the final U & O permit he never received. That notwithstanding, this Court made clear that Plaintiff did not receive a final U & O permit after his final inspection because the Iverson Mall did not have all the necessary permits to operate, which were a prerequisite to issuance of a final permit. (ECF No. 86 at 2-3). Also, Plaintiff fails to cite to any provision in the Prince George's County Code or other law demonstrating that PG County lacked discretion to deny him a final U & O permit, especially where such prerequisites remained unfulfilled. Plaintiff asserts that PG County adopted Section 111.2 of the International Building Code, which he contends provides that after "the building official inspects the building or structure and does not find violations of the provisions of this code or other laws that are enforced by the department of building safety, the building official shall issue a certificate of occupancy." (ECF No. 87 at 16). Plaintiff stresses that the "shall issue" language directs the issuance of the permit

once the inspection is passed, meaning PG County lacked the necessary discretion to decline him a final U & O permit consistent with a vested property interest. *Id.*

However, the undisputed facts construed in the light most favorable to the Plaintiff establish that PG County could not issue final U & O permits to tenants "because the Iverson Mall itself did not have all the necessary permits to operate . . . ." (ECF No. 86 at 3). Specifically, the issue at the Iverson mall was "a fire alarm that was not working, and therefore the Mall was not compliant with the local fire and safety codes." *Id.* at 4. The Court recognizes that Plaintiff applied for and completed all necessary steps for his business to be approved, and Mr. Montgomery even recommended approval. *Id.* at 3, 5. Even so, the record makes clear that PG County did not lack discretion to decline Plaintiff a final U & O permit. Rather, the record is replete with undisputed evidence that issuance of Plaintiff's anticipated final U & O permit could not occur in compliance with the law until the Iverson Mall obtained a U & O. Therefore, there does not exist a genuine issue of material fact such that a fact finder could reasonably find that Plaintiff possessed a vested right in the final U & O permit.

### B. No Reasonable Juror Could Conclude PG County's Actions Fell Far Beyond the Outer Limits of Legitimate Governmental Action.

Even if the Court were to assume that Plaintiff had a property interest in the final U & O permit, Plaintiff must still establish that PG County's failure to issue the permit "falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *CMDS Residential, LLC*, 714 F. Supp. 3d at 620 (quoting *Sylvia Dev. Corp.*, 48 F.3d at 827) (emphasis in original). "The protection of substantive due process is indeed narrow and covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Id.* (quoting

*Sylvia*, 48 F.3d at 827) (other citations omitted). "The state action must be 'conscience shocking, in a constitutional sense.'" *Siena Corp. v. Mayor & Rockville Md.*, 873 F.3d 456, 464 (4th Cir. 2017) (quoting *Huggins v. Prince George's County*, 683 F.3d 525, 535 (4th Cir. 2012)). Plaintiff sets forth several arguments suggesting that PG County's actions fell beyond the outer limits of legitimate governmental actions, including that the final U & O permit was approved by Mr. Montgomery but never issued, that DPIE never issued a temporary permit that Plaintiff alleges he was eligible to receive, and that PG County did not impose the same restrictions on other tenants at the mall. (ECF No. 87 at 19).

Here, the undisputed evidence does not approach the conscience shocking threshold required to establish a substantive due process violation. Plaintiff devotes considerable attention to arguing that "[w]here the state actor has time to consider, consult, and decide, the deliberate-indifference standard governs." (ECF No. 87 at 20). Plaintiff states that he does not claim that the "data-entry failure of July 2019 violated the constitution" but that the failure to issue the U & O permit after approval did. *Id.* Although any facts related to PG County's alleged deliberate indifference inform a substantive due process inquiry, as set forth above, Plaintiff's substantive due process claim turns on whether PG County's conduct was so arbitrary and irrational that it falls beyond the outer limits of legitimate governmental action. *See CMDS Residential, LLC*, 714 F. Supp. 3d at 620; *Sylvia Dev. Corp.*, 48 F.3d at 827; *Huggins*, 683 F.3d at 535; *Siena Corp.*, 873 F.3d at 463. As further explained below, PG County's conduct did not meet this high threshold.

Next, Plaintiff argues that PG County's failure to issue a temporary U & O permit after the denial of a final permit lacked any justification and "left a compliant applicant unable to open for more than five years for no reason it has been able to articulate." (ECF No. 87 at 24). Plaintiff asserts that PG County "offers no evidence that anyone at DPIE considered a temporary permit for

Hoang, offered him one, or told him one was available." *Id.* at 22. Defendant responds by arguing that "[a] discretionary opportunity to obtain a different, temporary permit is not the same property interest" nor does it establish an unconditional entitlement. (ECF No. 89 at 6).

The Court notes that Plaintiff appears to argue that he was entitled to a temporary U & O permit and that PG County's failure to provide a temporary permit supports his claim that PG County's denial of a final U & O permit fell outside the bounds of legitimate government action. As this Court has thoroughly detailed *supra*, to the extent Plaintiff argues that he possessed a vested property interest in a temporary U & O permit, Plaintiff has failed to cite to any authority demonstrating that the county lacked discretion to deny a temporary U & O permit. Consequently, no reasonable juror could find that Plaintiff had possessed a vested property interest in a temporary U & O permit.

Additionally, to the extent Plaintiff argues that PG County's failure to issue a temporary U & O permit demonstrates arbitrary governmental action sufficient to constitute a substantive due process violation, Plaintiff has not adduced evidence sufficient to create a genuine dispute of material fact. Plaintiff's Brief claims that PG County did not impose uniform restrictions to other tenants at the mall with regard to both temporary and final U & O permits. However, as Plaintiff acknowledges, this Court has already found that PG County had a rational basis distinguishing Plaintiff from Shoppers World and CitiTrends. The Court previously found that CitiTrends "had met what engineers needed so that their patrons could get out if there was an emergency" and there is no evidence that Plaintiff did the same. (ECF No. 86 at 7, 12). Also, "[t]he undisputed evidence also shows that Shopper's World received a permanent U & O, but because Shopper's World is an independent building with a fire alarm, no reasonable juror could conclude that the two businesses

are similarly situated." *Id.* at 12.[5] Therefore, from the Court's review of the record, there is a clear explanation why both CitiTrends and Shopper's World received a temporary U & O permit instead of Plaintiff.

In addition, considering all facts relating to PG County's denial of Plaintiff's final U & O permit in the light most favorable to Plaintiff, including the lack of any temporary U & O, the Court's review of the record demonstrates that Plaintiff cannot establish that PG County's actions were sufficiently conscious shocking in a constitutional sense. Instead, the record reflects "an imperfect and unfortunate scenario in which a combination of problems such as the Iverson Mall's safety functions as well as internal DPIE system issues . . . resulted in Plaintiff's U & O permit being delayed for a time period well beyond his reasonable expectation or desire." (ECF No. 86 at 13-14). No reasonable factfinder could conclude on this record that PG County's conduct exceeded the outer limits of legitimate government action as the record lacks any inference that PG County selectively applied its rules in an unconstitutional manner or for an illegitimate purpose. Nor does the lack of alternative relief during the relevant period permit a reasonable inference that PG County's conduct was sufficiently arbitrary to meet this high standard.

Therefore, no reasonable juror could conclude that PG County's actions fell so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.

### C. Plaintiff's *Monell* Claims Cannot Survive as a Matter of Law

Having failed to establish a genuine dispute of material fact as to whether his substantive due process rights were violated and hence no underlying constitutional violation, Plaintiff's *Monell* claim must also fail. *Huggins*, 750 F. Supp. 2d 558 ("Plaintiffs cannot sustain a claim

[5] The Court previously found that "the undisputed reasons describing the reasons for the final U & O permit issued to Shopper's World and the temporary U & O permit issued to CitiTrends survive rational basis scrutiny as a matter of law." (ECF No. 86 at 13).

against the County under *Monell* where the Court finds no underlying constitutional violation by Defendant) (internal quotation marks and citation omitted); *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987) (holding that an underlying constitutional violation is a prerequisite for a *Monell* claim to prevail).

Therefore, the Court must GRANT summary judgment with respect to Count II.

### D. Count III Must be Dismissed Because There is no Evidence of a Substantive Due Process Violation

Count III alleges a violation of Article 24 of the Maryland Declaration of Rights based on equal protection and substantive due process. (ECF No. 1 at 10-11). The Court previously granted summary judgment of Count II insofar as it was predicated on an alleged equal protection violation. (ECF No. 86 at 17). However, the Court reserved ruling on Count III as "Article 24 is construed *in pari materia* with the Fourteenth Amendment." *Id.*

Plaintiff argues that Maryland's standard of review and its rule of municipal liability both differ from their federal counterparts. *Id.* at 21. Maryland courts have held that "state constitutional provisions are *in pari materia* with their federal counterparts or are the equivalent of federal constitutional provisions or *generally* should be interpreted in the same manner as federal provisions." *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (2002). However, "simply because a Maryland constitutional provision is *in pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart." *Id.* (emphasis in original).

Nevertheless, Plaintiff offers no basis to distinguish the Court's analysis of Article 24 of the Maryland Declaration of Rights from its analysis of analogous provisions of the Constitution. Although Plaintiff attempts to argue that *Dua v. Comcast Cable of Md., Inc.* requires Article 24 to be interpreted independently of its federal counterpart, *Dua* recognizes that "retrospective statutes

abrogating vested property rights . . . violate the Maryland Constitution." 805 A.2d 1061 at 1076. Consequently, this Court interprets Article 24 to provide the same protection as the Due Process Clauses of the United States Constitution. *See Pitsenberger v. Pitsenberger*, 410 A.2d 1052, 1056 (1980) ("Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the United States Constitution have the same meaning, and . . . Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24."); *Allmond v. Dep't of Health & Mental Hygine*, 141 A.3d 57, 67 (Md. 2016); *Knox v. Mayor & City Council Baltimore City*, No. CV JKB-17-1384, 2017 WL 5903709, at *8 (D. Md. Nov. 30, 2017). Accordingly, because the Court has already concluded that the record does not support a substantive due process violation, Plaintiff cannot survive summary judgment on this claim notwithstanding Maryland's recognition of respondeat superior liability for constitutional torts. *See Willey v. Bd. of Educ.*, 557 F. Supp. 3d 645, 671 (D. Md. 2021).

Therefore, the Court must GRANT summary judgment with respect to Count III.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED:

1. The Motion (ECF No. 78) is GRANTED with respect to Count II and Count III.
2. The Clerk of Court is asked to close the case.

Dated: October 21, 2026

/s/
J. Mark Coulson
United States Magistrate Judge